UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LEVI G. GREENUP | CIVIL ACTION NO. 18-1659 |
| | SECTION P |
| VS. | |
| | JUDGE ELIZABETH E. FOOTE |
| JAMES LEBLANC, ET AL. | MAG. JUDGE KAREN L. HAYES |

**REPORT AND RECOMMENDATION**

Plaintiff Levi G. Greenup, a prisoner at David Wade Correctional Center ("DWCC") proceeding pro se and in forma pauperis, filed the instant proceeding on December 28, 2018, under 42 U.S.C. § 1983. He names the following Defendants: Secretary James LeBlanc, Warden Jerry Goodwin, Colonel Evans, Lieutenant Colonel Cotrell, Sergeant Bass, Assistant Warden Rachel, Lieutenant Rachel,[1] John Does, Jane Does, Colonel Mays, Captain Kennedy, Lieutenant Stamper, Lieutenant Hatter, Sergeant Norris, Sergeant Coleman, Sergeant Kimberlyn, Sergeant Natalie, Sergeant Ford, and Sergeant Sepulvado.[2]

For reasons that follow, the following claims should be dismissed: (i) that some conditions of confinement violate Plaintiff's privacy; (ii) that DWCC lacks a sprinkler system; (iii) that the bathrooms lack barriers or partitions between the toilets and showers and that a window in the bathroom allows female and male guards to view the showers; (iv) Plaintiff's request for monetary relief against Defendant LeBlanc in LeBlanc's official capacity; (v) Plaintiff's request for a transfer; (vi) that Defendants Evans and Cotrell failed to protect Plaintiff

---

[1] Plaintiff does not distinguish Assistant Warden Rachel from Lieutenant Rachel. Below, the undersigned analyzes Plaintiff's claims as if the two defendants are the same individual.

[2] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

from a "predatory prisoner" who was "shower stalking" him; (vii) that Defendants Evans and Cotrell threatened Plaintiff; (viii) that Defendant Kennedy did not relay Plaintiff's report of sexual abuse, that Defendant Rachel denied his administrative remedy request, and that Defendant Cotrell failed to conduct an unbiased Prison Rape Elimination Act ("PREA") investigation; (ix) that Defendant Rachel falsified an investigative report and that Defendants John Does, Rachel, Stamper, Hatter, Norris, Coleman, Kimberlyn, Natalie, Ford, and Sepulvado lied in a report; and (x) that Defendant Mays enabled sexual assaults.[3]

The Court should dismiss the following defendants: Colonel Mays, Captain Kennedy, Lieutenant Stamper, Lieutenant Hatter, Sergeant Norris, Sergeant Coleman, Sergeant Kimberlyn, Sergeant Natalie, Sergeant Ford, and Sergeant Sepulvado.

**Background**

Plaintiff raises a host of allegations, including allegations of sexual assault, inhumane living conditions, falsifying investigative reports, ignoring sexual assault allegations, deteriorating infrastructure, inadequate ventilation, communal bathrooms and showers, insect infestations, and plumbing deficiencies. [doc. # 1, p. 3]. Plaintiff claims that:

- "PREA officials . . . cover up" sexual assault "incidents by not documenting them and/or [by] falsifying investigative reports" and always finding in favor of officials;

- The ceilings in many of the dorms leak when it rains, resulting in slippery floors;

---

[3] Plaintiff sets forth additional claims in his pleadings that are not subject to the instant Report and Recommendation, including: (a) that Sergeant Bass sexually abused him; (b) that John Does, Jane Does, Warden Goodwin, Colonel Evans, and Lieutenant Colonel Cotrell failed to protect him from sexual abuse; (c) that Warden Goodwin, Secretary LeBlanc, and Assistant Warden Rachel were deliberately indifferent to conditions of confinement concerning sanitation at DWCC; and (d) that certain defendants were negligent for failing to remedy wet floors caused by leaks in the ceiling. The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for the additional claims.

○ Parts of the facility are infested with cockroaches, red ants, sugar ants, and other insects;

○ The ventilation is inadequate in "each unit," resulting in steam from the showers collecting on the ceiling and dripping on prisoners using the toilets, urinals, and sinks;

○ The bathroom floors are wet and slippery because of the inadequate ventilation and the consequent steam dripping from the ceilings;

○ "There are insufficient toilets and urinals for the 79 prisoners" in each dormitory;

○ Generally, "only 1 or 2 toilets or urinals are operable";

○ The toilets are "so close together that if someone is sitting on the next toilet down then [that person] will be touching the other prisoner's knee";

○ "The urinals are only inches apart";

○ Some urinals are broken and spray a "mist of water/urine into the air and on the person flushing" them;

○ The bathrooms lack barriers between the toilets and showers, which enables "predator prisoners" to masturbate in view of "prey prisoners" using the toilets;

○ A window in the bathroom allows female and male guards to "look directly into the shower area" and view prisoners' genitals;

○ There is no sprinkler system in the dorms;

○ Toilet water leaks "into the phone area";

○ When Plaintiff lived in dorm "H4A, the . . . basin sink used to fill the mop buckets would leak from the drain out on to the bathroom, flooding the bathroom and making it unsafe to walk";

○ When he "was housed in H1B[,]" red ants (to which he is allergic) bit him every night while he slept, and rainwater dripped from the ceiling, causing him to either move his bed or sleep in a trash bag;

○ The puddle of rain water, which leaked from the ceiling to the dorm floor, caused him to slip and hit his knee on the side of his bed;

- After requesting to transfer dorms due to a "predatory prisoner" stalking him in the shower, Defendants Cotrell and Evans threatened him "with lockup";

- On January 18, 2018, Defendant Bass conducted a baseless strip search of Plaintiff's person and then sexually abused Plaintiff, fondling his penis, grabbing his buttock, massaging his shoulders, chest, and hips, and forcing him to bend over and spread his buttocks;

- Certain defendants failed to prevent Defendant Bass's sexual abuse; and

- Captain Kennedy failed to report plaintiff's PREA allegation.

[doc. #s 1, 9].

Plaintiff asks the Court to declare that Defendants violated his civil rights and to award compensatory, punitive, and nominal damages. [doc. # 9, p. 15]. He also asks the Court to order Defendants to repair the facility, remove the insect infestation, "arrange for an outside agency to supervise investigations of PREA allegations," and transfer him to Rayburn Correctional Center.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

4

malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the

allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require

that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[5] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[6] However, "Nothing so amorphous as 'overall conditions' can rise to the level

---

[5] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[6] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff describes several conditions of confinement that implicate his privacy, and he also complains of a condition of confinement affecting his safety. With respect to the former, he claims that there is not enough distance between the toilets and between the urinals. [doc. # 9, p. 4]. The toilets are "so close together that if [he] is sitting on the next toilet down then his knee will be touching the knee of the other person using the toilet." *Id.* The urinals are approximately 10.5 inches apart. *Id.* He claims that the bathrooms lack barriers between the toilets and showers, which enables "predator prisoners" to view him using the toilet. *Id.* at 6. He also claims that a window in the bathroom allows female and male guards to "look directly into the shower area" and view prisoners' genitals. [doc. # 1, p. 7].

To the extent Plaintiff alleges that these conditions violated the Eighth Amendment, he does not allege a plausible claim.[7] The conditions alleged do not reflect an extreme deprivation of any minimal civilized measure of life's necessities.[8] The Eighth Amendment does not afford protection against conditions of confinement which cause mere discomfort or inconvenience.

---

[7] As discussed below, the Fourth and Fourteenth Amendments are more pertinent to Plaintiff's claims concerning lack of partitions near the toilets and the presence of a window in the bathroom.

[8] See *Ordaz v. Martin*, 5 F.3d 529 (5th Cir. 1993) (determining, where the plaintiff alleged that female prison guards viewed him masturbating, that the condition did not "rise to the level of cruel and unusual punishment."); *Radford v. Thomas*, 2016 WL 3919483, at *18 (M.D. Ala. Mar. 1, 2016), report and recommendation adopted, 2016 WL 3912039 (M.D. Ala. July 19, 2016) (determining that, in addition to other alleged conditions, "the close proximity of showers to toilets, coupled with the lack of shower curtains," did not deny the plaintiff a minimal civilized measure of life's necessities); *Crawford v. Epps*, 2015 WL 5178125, at *13 (N.D. Miss. Sept. 4, 2015).

*Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Moreover, "Loss of freedom of choice and privacy are inherent incidents of confinement . . . ." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).[9] Here, Plaintiff's ostensible Eighth Amendment claims should be dismissed.[10]

Turning to Plaintiff's claim concerning safety, he alleges that the facility lacks a sprinkler system. [doc. # 1, p. 7]. He believes the absence of a sprinkler system "is against some fire code." *Id.*

Plaintiff does not, however, identify a substantial risk of serious harm. The terse allegations do not demonstrate, for instance, that the facility is particularly susceptible to fire. See *Johnson v. Texas Bd. of Criminal Justice*, 281 F. App'x 319, 322 (5th Cir. 2008) ("As Johnson did not allege that anyone had been injured by any type of fire or that Wynne was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim.").[11] Moreover, the alleged deficiency bears little, if any, relation to the other

---

[9] See also *Hudson v. Palmer*, 468 U.S. 517, 528 (1984) ("We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.").

[10] To the extent Plaintiff complains that the distance between the lavatories implicates his health rather than his privacy, [doc. # 1, p. 5], this claim should be retained. Specifically, it should be retained along with the other alleged conditions of confinement affecting the sanitation at DWCC. See, e.g., *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th Cir. 1987), on reh'g, 858 F.2d 1101 (5th Cir. 1988) (holding that the following stated a claim: the plaintiffs' "cell block was overcrowded, had inadequate ventilation and lighting, and was dirt and insect infested.").

[11] See also *Billizone v. Jefferson Par. Corr. Ctr.*, 2015 WL 1897683, at *4 (E.D. La. Apr. 27, 2015) (denying a claim that a correctional center was "not up to code[,]" reasoning that

conditions of confinement (i.e. lack of privacy and sanitation) of which Plaintiff complains. While Plaintiff refers to an unidentified fire code, the safety code would only be "instructive in certain cases," would only establish recommended goals, and would "not establish the constitutional minima . . . ." *Bell v. Wolfish*, 441 U.S. 520, n. 27 (1979).[12] Ultimately, Plaintiff's claim is conclusory and should, accordingly, be dismissed.[13]

**3. Lack of Privacy**

To reiterate, Plaintiff claims that the bathrooms lack barriers or partitions between the toilets and showers, which enables "predator prisoners" to view him using the toilet, and that a window in the bathroom allows female and male guards to "look directly into the shower area" and view prisoners' genitals. [doc. #s 1, p. 7; 9, p. 4].

"Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Prisoners also retain a "minimal, at best," right to bodily privacy under the Fourteenth Amendment. *Id.* at 745. "But,

---

while the "situation" is "far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could be found to be deliberately indifferent if they allowed it to continue."); *Patin v. LeBlanc*, 2012 WL 3109402, at *16–17 (E.D. La. May 18, 2012), report and recommendation adopted, 2012 WL 3109398 (E.D. La. July 31, 2012) (finding that the plaintiff "has not alleged a specific risk of harm or that any actual harm has occurred as a result of the fire and electrical system at the prison.").

[12] See *Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. Nor is it bound by the standards set by the safety codes of private organizations. Standards suggested by experts are merely advisory. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure." (citations omitted)).

[13] Plaintiff also fails to allege that any defendant was sufficiently involved in failing to remedy the alleged deficiency.

even if a prison regulation 'impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Garrett v. Thaler*, 560 F. App'x 375, 380 (5th Cir. 2014) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Affirming the dismissal of a plaintiff's claim that "video recording cameras in the restrooms, showers, and dressing areas of the prison—as well as female officers' viewing of male inmates both in those areas and on the cameras—violate[d] [the plaintiff's] expectation of minimal privacy under the Fourth Amendment, the Fifth Circuit explained:

> [W]e rejected in *Oliver* a similar challenge on the grounds that "constant surveillance, even cross-sex surveillance, of prisoners is constitutional because it is reasonably related to the penological interest of maintaining security." *Oliver*, 276 F.3d at 745-46. The court found that, as here, comprehensive surveillance by all guards increases the overall security of the prison, minimizing inmate-on-inmate violence and sexual assaults. *Id.* at 746. Moreover, requiring only male guards to supervise inmates or doing away with security cameras in the bathroom and dressing areas could require the prison to increase staffing or reassign a large percentage of its staff, or both, and there is no readily identifiable alternative that would impose only *de minimis* expenses in terms of inmate security, staffing costs, or equal employment opportunities. *Id.* We have subsequently affirmed this position. See, e.g., *Mitchell v. Quarterman*, 515 Fed. Appx. 244, 247 (5th Cir. 2012) (unpublished)[.]

*Id.* at 380-81.[14]

Here, Plaintiff is essentially concerned with the lack of bodily privacy between prisoners and between prisoners and staff (both male and female). The lack of privacy, however,

---

[14] Of note, the Fifth Circuit affirmed dismissal even though the defendants did not offer a legitimate governmental or penological interest. *Id;* see also *Ordaz*, 5 F.3d at 529; *Bryant v. Strong*, 2013 WL 504893, at *3 (S.D. Tex. Feb. 7, 2013) ("Prison policies and practices allowing male inmates to be strip searched in the presence of female officers are widely-utilized throughout state and federal prison systems, and the courts have generally recognized their constitutionality under the penumbra of 'legitimate penological interests.'"); *Patin v. LeBlanc*, 2012 WL 3109402, at *20 (E.D. La. May 18, 2012), report and recommendation adopted, 2012 WL 3109398 (E.D. La. July 31, 2012).

manifestly stems from measures designed to enhance the legitimate penological interests of safety and security. These allegations do not amount to a plausible constitutional violation.[15] Accordingly, these claims should be dismissed.

### 4. Defendant LeBlanc

Plaintiff seeks monetary relief from Defendant James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections ("LDPSC"),[16] in LeBlanc's official capacity only. [doc. # 9, p. 2]. Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. In that respect, "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume

---

[15] See *Petty v. Johnson*, 193 F.3d 518 (5th Cir. 1999) ("The presence of female prison guards for security reasons on those occasions when male prisoners are naked is not a constitutional violation."); *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) (holding that the use of female guards in guard towers giving a full view of male inmates taking showers is not unconstitutional); *Ordaz*, 5 F.3d at 529 (dismissing, under the Fourth Amendment, a claim that female officers viewed the plaintiff masturbating and reasoning: "a prisoner has no reasonable expectation of privacy in the 'curtilage' surrounding his prison cell. Consequently, the female guards' observations from this vantage point could not have constituted a search within the meaning of the Fourth Amendment."); *Guy v. Tanner*, 2012 WL 1565425, at *3 (E.D. La. Mar. 20, 2012), report and recommendation adopted, 2012 WL 1565421 (E.D. La. May 2, 2012) ("[T]he federal constitution simply does not require that prison officials honor plaintiff's preference not to be seen naked by his fellow inmates of the same gender."); *Warren v. Gusman*, 2017 WL 1373875, at *7 (E.D. La. Mar. 10, 2017), report and recommendation adopted, 2017 WL 1355709 (E.D. La. Apr. 13, 2017) (dismissing a claim that a prisoner was subjected to video surveillance in a bathroom with no partitions); *Clayborne v. Beasley*, 2009 WL 929305, at *2 (S.D. Miss. Apr. 2, 2009) (dismissing a claim concerning the absence of partitions in a restroom and female officers viewing the prisoner masturbating); *Hmeid v. Nelson Coleman Corr. Ctr.*, 2018 WL 4922381, at *14 (E.D. La. Aug. 15, 2018), report and recommendation adopted, 2018 WL 4909898 (E.D. La. Oct. 10, 2018) (dismissing a claim that a plaintiff's "privacy rights were violated because there was no partition wall between the shower and toilet areas of the Coleman dorm, and that the guards constantly watched the inmates in those areas from an observation pod.").

[16] See LA. REV. STAT. § 36:403.

the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

Here, the LDPSC and, in turn, the State of Louisiana, employs Defendant LeBlanc. See *id.* at 25 ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ."). The LDPSC is not a "person" under Section 1983. *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and DPSC are not persons . . . ."); see *Carrere v. May*, 2016 WL 6684796, at *2 (W.D. La. Sept. 9, 2016), report and recommendation adopted, 2016 WL 6684247 (W.D. La. Nov. 14, 2016) ("[T]he Louisiana Department of Corrections, a state agency, is not a 'person' within the meaning of 42 U.S.C. § 1983."). Likewise, "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's request for monetary relief against Defendant LeBlanc in his official capacity should be dismissed.[17]

**5. Transfer**

Plaintiff asks the Court to transfer him to a different facility. [doc. # 9, p. 14]. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement."

---

[17] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Id.* (internal quotation marks and quoted sources omitted).

*Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, his request for a transfer should be dismissed.

**6. Failure to Protect**

Plaintiff claims that Defendants Evans and Cotrell failed to protect him from a "predatory prisoner" who was "shower stalking" him. [doc. #s 1, p. 8; 9, p. 6]. He asked Evans to transfer him to a different dorm because of the prisoner. *Id.* Cotrell, however, informed Plaintiff that "he would have to place [Plaintiff] in P.C.[18]/extended lockdown if [Plaintiff] couldn't live on the North Compound." [doc. # 1, p. 8]. Plaintiff refused to "sign a P.C. form." *Id.*

To state a claim, Plaintiff must allege that Defendants' actions amounted to deliberate indifference. "That is, he must allege that they knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

---

[18] Presumably, Plaintiff refers to protective custody.

14

Plaintiff, however, does not allege that the "predatory prisoner" harmed him or caused him any damage. Thus, there was no harm from which Evans and Cotrell failed to protect Plaintiff. Rather, Plaintiff simply claims that Evans and Cotrell ignored a *risk* of harm. Moreover, Plaintiff's terse allegations do not reflect a substantial risk of serious harm, and Cotrell's offer to place Plaintiff in protective custody does not reflect deliberate indifference. Accordingly, these claims should be dismissed.

### 7. Threats

Plaintiff claims that Defendants Evans and Cotrell threatened him with "lock up after" Plaintiff requested a dorm transfer due to the "predatory prisoner." [doc. # 1, p. 8]. Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Likewise, allegations of mere verbal abuse do not give rise to a cause of action under Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191. Plaintiff does not state a claim of constitutional dimension. This claim should be dismissed.

### 8. Investigating Grievances

Plaintiff alleges that he reported Defendant Bass's sexual abuse, which Plaintiff refers to as the "PREA incident," to Defendant Kennedy, but Kennedy either did not relay his report or did relay it and "nothing was done . . . ." [doc. # 8, p. 1]. Plaintiff faults Defendant Rachel for denying his administrative remedy request. [doc. # 9, p. 11]. Plaintiff faults Defendant Cotrell for failing to conduct an unbiased PREA investigation. *Id.* at 12. He explains that Cotrell always rules in favor of the staff, even when it is clear that the officer's statement in the response to the PREA complaint is "false, self-serving, or doesn't add up." *Id.* at 10.

A plaintiff, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. 2004) (holding that "claims that the defendants violated . . . constitutional rights by failing to investigate . . . grievances fall short of establishing a federal constitutional claim."). In *Sandin v. Conner*, 515 U.S. 472, 474 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. See also *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, Plaintiff's claims should be dismissed.

To the extent Plaintiff seeks relief under the PREA, it does not establish a private cause of action. *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015). "[A]ny claim raised under the PREA is properly dismissed as frivolous." *Id.*; see also *Moses v. GEO*, 2018 WL 1354068, at *3 (W.D. La. Mar. 14, 2018) (dismissing claims that officials failed to follow PREA protocol). These claims should be dismissed.[19]

### 9. Lying in Reports

Plaintiff alleges that Defendant Rachel falsified an investigative report. [doc. #s 1, p. 5; 9, pp. 4, 11]. Plaintiff also alleges that Defendants John Does, Rachel, Stamper, Hatter, Norris,

---

[19] The aforementioned allegation is the only allegation against Defendant Kennedy; thus, Defendant Kennedy should be dismissed.

Coleman, Kimberlyn, Natalie, Ford, and Sepulvado lied in a report when they stated that "they were present during the strip search/sexual assault" that Defendant Bass allegedly committed. [doc. #s 1, p. 9; 8; 9, p. 13].

These allegations do not amount to a constitutional violation. *Barber v. Quarterman*, 437 F. App'x 302, 304 (5th Cir. 2011) (concluding, where the plaintiff alleged that "officials falsified a report in violation of his right to due process and that others conspired with them to falsify the report[,]" that the allegations did "not state a claim under § 1983 because [the plaintiff] identified no constitutional violation."); see *LeBlanc v. Louisiana State Penitentiary*, 2015 WL 5011984, at *4 (M.D. La. July 28, 2015), report and recommendation adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015); *Ryals v. El Paso Cty.*, 2015 WL 3540951, at *10 (W.D. Tex. June 3, 2015).

Plaintiff also fails to state a claim to the extent he claims that these Defendants impeded his access to court. To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here, Plaintiff does not allege that he lost an actionable claim or that a defendant

17

prevented him from presenting a claim to any court. See *Christopher v. Harbury*, 536 U.S. 403 (2002) (holding, where the plaintiff claimed that officials concealed information about her husband's fate, that she failed to state a claim for denial of her right of access to courts).[20] These claims should be dismissed.[21]

**10. Defendant Mays**

Plaintiff alleges, without elaboration, that he names Defendant Mays as a defendant because Mays is the "Head PREA Official for enabling sexual assaults." [doc. # 8, p. 1]. A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662. Here, Plaintiff's allegation is entirely conclusory and should, accordingly, be dismissed.[22]

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that the following claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief

---

[20] See, e.g., *Flores v. Ramierez*, 2014 WL 3050146, at *11 (W.D. Tex. July 3, 2014) (reasoning that, if "an effort was made to cover up the use of excessive force, it was unsuccessful" because the plaintiff was able to file his claim); *Casto v. Plaisance*, 2016 WL 2855468, at *12 (E.D. La. May 16, 2016) (denying a claim that defendants conspired to cover up "wrongful conduct," reasoning that the plaintiff "has not alleged that there was a litigation that ended poorly or that he cannot now seek some particular relief in litigation due to the alleged cover-up."); *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 461 (W.D. Tex. 1999).

[21] The aforementioned allegations are the only allegations against Defendants Stamper, Hatter, Norris, Coleman, Kimberlyn, Natalie, Ford, and Sepulvado; thus, these defendants should be dismissed.

[22] Defendant Mays should be dismissed from this proceeding.

can be granted: (i) that some conditions of confinement violate Plaintiff's privacy; (ii) that DWCC lacks a sprinkler system; (iii) that the bathrooms lack barriers or partitions between the toilets and showers and that a window in the bathroom allows female and male guards to view the showers; (iv) Plaintiff's request for monetary relief against Defendant LeBlanc in LeBlanc's official capacity; (v) Plaintiff's request for a transfer; (vi) that Defendants Evans and Cotrell failed to protect Plaintiff from a "predatory prisoner" who was "shower stalking" him; (vii) that Defendants Evans and Cotrell threatened Plaintiff; (viii) that Defendant Kennedy did not relay Plaintiff's report of sexual abuse, that Defendant Rachel denied his administrative remedy request, and that Defendant Cotrell failed to conduct an unbiased Prison Rape Elimination Act ("PREA") investigation; (ix) that Defendant Rachel falsified an investigative report and that Defendants John Does, Rachel, Stamper, Hatter, Norris, Coleman, Kimberlyn, Natalie, Ford, and Sepulvado lied in a report; and (x) that Defendant Mays enabled sexual assaults.

**IT IS FURTHER RECOMMENDED** that the following defendants be **DISMISSED**: Colonel Mays, Captain Kennedy, Lieutenant Stamper, Lieutenant Hatter, Sergeant Norris, Sergeant Coleman, Sergeant Kimberlyn, Sergeant Natalie, Sergeant Ford, and Sergeant Sepulvado.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 6th day of March, 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE